UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CLYDE R. THOMAS, JR.,

                                    Petitioner,

                v.                                          9:02-CV-0816
                                                               (LEK/GJD)

MELVIN L. HOLLINS, Superintendent,

                                    Respondent.
_____

**APPEARANCES:**                              **OF COUNSEL:**

**FOR THE PETITIONER**:

**HON. ALEX BUNIN**                          **GEORGE E. BAIRD, Esq.**
Office of the Federal Public Defender         Assistant Public Defender
39 North Pearl Street
5th Floor
Albany, NY 12207

**FOR THE RESPONDENT:**

**HON. ANDREW CUOMO**                        **RISA VIGLUCCI, Esq.**
Office of Attorney General                    Ass't Attorney General
State of New York
The Capitol
Albany, NY 12224

**LAWRENCE E. KAHN**
**UNITED STATES DISTRICT JUDGE**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

I.    <u>**Background**</u>[1]

   A.    <u>**State Court Proceedings**</u>

   During the early morning hours of September 27, 1998, Amy Baker ("Baker") and her

brother, Petitioner Clyde R. Thomas, Jr. ("Thomas" or "petitioner"), were at a local tavern in

Ogdensburg, New York.  <u>See</u> Transcript of Trial of Clyde R. Thomas, Jr. (8/10/99) ("Trial Tr.")

at 61-63.  At approximately 1:00 a.m., Thomas and other members of Baker's family who were

at Nig's Tavern became embroiled in an argument with Baker because she was attempting to

leave that bar with Brett Corkins ("Corkins").  Trial Tr. at pp. 64-67.  When Corkins and Baker

left the establishment together, Thomas pursued the two and eventually hit Corkins with a

baseball bat.[2]  Later on that same night, Christopher McDonald ("McDonald") punched an

acquaintance, Heidi Badlam, while the two were at Nig's Tavern.  Trial Tr. at pp. 320, 449.

The two began exchanging blows, Trial Tr. at p. 321, and soon thereafter, Thomas approached

McDonald and struck him in his head with a bat.  Trial Tr. at pp. 252-53, 306-07, 321-22, 449.

   As a result of the foregoing, on November 9, 1998 a St. Lawrence County grand jury

indicted Thomas, in two separate indictments, charging him with the crimes of second degree

---

   [1] Facts relating to the underlying criminal matter and various state court proceedings
which occurred prior to the commencement of this action are discussed in detail in the
Memorandum-Decision and Order previously issued by this Court on May 15, 2006.  <u>See</u>
Memorandum-Decision and Order (5/15/06) (Dkt. No.  51) ("May, 2006 MDO") at pp. 1-5.
Although familiarity with the May, 2006 MDO is presumed, this Court briefly reviews some
of the factual background discussed in that prior order so as to place the matters which are
addressed in this Memorandum-Decision and Order in their proper context.

   [2] The force of the blow caused Corkins to fall back against a nearby building.  Trial
Tr. at p. 114.

assault.  See Appellant's Appendix on Appeal ("App.") at pp. A2-3.  St. Lawrence County

Court Judge Eugene L. Nicandri subsequently granted the prosecutor's motion to consolidate

the two indictments, see App. at p. A11, and beginning on August 10, 1999, Thomas was tried

before a jury on those charges in St. Lawrence County Court with Judge Nicandri presiding.

The jury ultimately convicted Thomas of two counts of second degree assault, Trial Tr. at p.

482, and on September 7, 1999, Thomas was sentenced by the County Court to consecutive

terms of six and one-half years imprisonment on each of his two convictions.  Sentencing Tr. at

pp. 14-15.

　　　Thomas thereafter filed an appeal regarding his convictions and sentences with the New

York State Supreme Court, Appellate Division, Third Department.  On July 20, 2000, the Third

Department affirmed Thomas' conviction relating to the assault on McDonald.  People v.

Thomas, 274 A.D.2d 761, 762-63 (N.Y. App. Div., 3d Dept. 2000).  However, the Third

Department concluded that there was insufficient evidence adduced at trial to establish

Thomas' guilt for the second degree assault charge as to Corkins, and therefore reduced

Thomas' conviction relating to Corkins to attempted second degree assault.  Thomas, 274

A.D.2d at 761-62.  As a consequence, the Third Department remitted the matter to the trial

court for re-sentencing.  Thomas, 274 A.D.2d at 763.  At that re-sentencing, the County Court

sentenced Thomas to an indeterminate term of two to four years imprisonment on the second

degree attempted assault conviction, and a consecutive, six and one-half year determinate term

of imprisonment on his second degree assault conviction.  The Third Department unanimously

affirmed those sentences on appeal.  See People v. Thomas, 283 A.D.2d 724 (N.Y. App. Div.,

3d Dept. 2001).

In or about February, 2002, Thomas filed an application seeking a writ of error *coram nobis* with the Third Department ("February, 2002 *Coram Nobis* Application"). In that request, Thomas claimed that his appellate counsel, Richard V. Manning, Esq. ("Attorney Manning"), rendered ineffective assistance because he failed to argue on appeal that: 1) the County Court wrongfully deprived Thomas the opportunity to accept a plea proposal offered by the District Attorney; 2) the County Court wrongfully failed to provide the jury with an instruction required under New York's Criminal Procedure Law ("CPL"); 3) the burden of proof at trial was improperly shifted to Thomas by both the prosecution and the County Court; 4) Thomas was entitled to a new trial due to prosecutorial misconduct; and 5) Thomas was deprived of the effective assistance of trial counsel. See Memorandum of Law in Support of February, 2002 *Coram Nobis* Application ("February, 2002 Supporting Mem.") at pp. 1-17. The District Attorney opposed that application, Dkt. No. 49, and in its Decision and Order dated April 12, 2002, the Third Department denied that request for relief. See People v. Thomas, No. 13741 (N.Y. App. Div, 3d Dep't. Apr. 12, 2002) (Dkt. No. 43, Ex. 11) ("April, 2002 Order").

Thomas thereafter filed a second *coram nobis* application with the Third Department in September, 2003 ("September, 2003 *Coram Nobis* Application"). In that application, Thomas alleged that Attorney Manning labored under a conflict of interest when he represented Thomas on appeal because appellate counsel had previously prosecuted Thomas in counsel's prior capacity as the St. Lawrence County District Attorney. See Affidavit in Support of September, 2003 *Coram Nobis* Application at ¶¶ 9-31. On November 14, 2003, the Third Department issued a Decision and Order in which it denied and dismissed petitioner's September, 2003 *Coram Nobis* Application. See People v. Thomas, No. 14937 (N.Y. App. Div., 3d Dep't. Nov.

4

14, 2003) (Dkt. No. 43, Ex. 13).  On January 13, 2004, the Court of Appeals denied Thomas'

application for leave to appeal that decision.  See People v. Thomas, 1 N.Y.3d 602 (2004).

### B.    Proceedings in this Court

Thomas commenced this proceeding, *pro se*, on June 20, 2002.  See Petition (Dkt. No.

1).  On April 19, 2004, following various proceedings both in this action as well as in the state

courts, which Thomas pursued while his federal habeas petition was stayed, petitioner filed an

amended habeas petition in this action.  See Dkt. No. 40 ("Am. Pet.").  In that pleading,

Thomas alleges that: 1) he was denied the effective assistance of appellate counsel; 2) the trial

court improperly denied Thomas the opportunity to accept a plea proposal offered by the

District Attorney's office; 3) the county court failed to provide the jury with an instruction

required under the CPL when the prosecutor impeached his own witness; 4) the burden of proof

was improperly shifted to the defense during the course of the criminal trial; 5) the prosecutor

engaged in misconduct during the criminal proceedings below; and 6) he was denied the

effective assistance of trial counsel.  See Am. Pet. (Dkt. No. 40), Grounds One through Six.

On June 1, 2004, the Office of the Attorney General for the State of New York, acting

on respondent's behalf, filed a response in opposition to Thomas' amended petition.  Resp.

Mem (Dkt. No. 43).  In his opposing memorandum, respondent asserts that Thomas is both

procedurally barred from obtaining the relief he seeks as to the majority of his federal claims,

and that none of the grounds advanced in the amended petition have merit.  See Resp. Mem.

(Dkt. No. 43) at pp. 6-15.  On June 22, 2004, Thomas filed, with the permission of this Court, a

traverse in further support of his amended petition.  See Traverse (Dkt. No. 45).

In a Memorandum-Decision and Order issued on May 15, 2006, this Court denied

5

various aspects of Thomas' amended petition, however, it determined that an evidentiary

hearing was required in order to address adequately certain of the claims raised by Thomas in

his amended pleading.  See May, 2006 Order (Dkt. No. 51).  This Court also appointed the

Federal Public Defender for the Northern District of New York to represent petitioner at the

scheduled hearing.  May, 2006 Order (Dkt. No. 51) at pp. 43-44; see generally Rule 8(c) of the

Rules Governing Section 2254 Cases and 18 U.S.C. § 3006A(a)(2).

On September 26, 2006, an evidentiary hearing was held at the James T. Foley United

States Courthouse in Albany, New York at which testimony was received relating to the claims

remaining in Thomas' amended petition, and the parties subsequently filed briefs in further

support of their respective positions.  See Dkt. Nos. 60-62.

**II.** **Discussion**

**A.** **Standard of Review**

As noted in this Court's May, 2006 Order, under the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), federal courts may only grant habeas relief to a state prisoner

under 28 U.S.C. § 2254 if the state court's adjudication of the claim is either contrary to, or

involves an unreasonable application of, clearly established Supreme Court precedent, or if the

state court's decision reflects an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding.  See May, 2006 Order (Dkt. No. 51) at pp.  7-9; see also

Jimenez v. Walker, 458 F.3d 130 *passim* (2d Cir. 2006).

**B.      Review of Thomas' Remaining Claims**[3]

    **1.      Ineffective Assistance of Appellate Counsel**

       **a.      Clearly Established Supreme Court Precedent**

The proper standard for evaluating a habeas petitioner's claim that his appellate counsel rendered ineffective assistance is the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Smith v. Robbins, 528 U.S. 259, 287-89 (2000); Penson v. Ohio, 488 U.S. 75, 86-88 (1988).  Under Strickland, to establish a violation of one's constitutional right to the effective assistance of counsel, a habeas petitioner must show both:  I) that counsel's representation fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms; and ii) resulting prejudice – that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  Strickland, 466 U.S. at 688-90.

       **b.      Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent**

          **I.      Plea Proposal Offered by the Prosecutor**

As noted in the May, 2006 Order, petitioner argues, *inter alia*, that his appellate counsel improperly failed to argue on appeal that Thomas was wrongfully denied the opportunity to plead guilty prior to trial due to the County Court's arbitrary policy of refusing to consider plea bargains to criminal charges once a jury has been selected for a criminal trial.  See May, 2006

---

[3] In the Court's May, 2006 Order, Thomas' fourth and fifth grounds for relief, as well as the portions of his sixth ground alleging ineffective assistance of trial counsel, were denied.  See May, 2006 Order (Dkt. No. 51) at pp. 44-45.

Order (Dkt. No. 51) at pp.  11-14; see also Am. Pet. (Dkt. No. 5), Ground One.[4]  In that Order,

this Court further noted that the trial transcript appeared to suggest that the sole reason the trial

court refused to allow Thomas to plead guilty to the reduced charge of second degree attempted

assault charge immediately prior to the commencement of the criminal trial was the fact that a

jury had already been chosen for that trial.  See May, 2006 Order (Dkt. No. 51) at pp. 12-13

(citing Trial Tr. at pp. 42-43).  Since such an arbitrary policy may have been contrary to Third

Department precedent that existed prior to the time at which Thomas' appeal was perfected,

e.g., People v. Compton, 157 A.D.2d 903, 903-04 (N.Y. App. Div., 3d Dep't. 1990), this Court

determined that more evidence was necessary to address petitioner's claim relating to appellate

counsel's failure to assert that petitioner was wrongfully denied the opportunity to plead guilty.

May, 2006 Order (Dkt. No. 51) at pp. 13-14.

        At the evidentiary hearing, appellate counsel explained the legal basis for his decision to

refrain from asserting the above-referenced claim on appeal.  Specifically, he noted that he had

interpreted the portion of the trial transcript wherein the County Court declared that it would

not permit Thomas to plead guilty in the following manner:

> the district attorney was putting on the record the fact that that
> plea offer had been made and refused because what, what – when
> the Judge said something after that, the district attorney said that's
> fine with me.  I understood that that plea had been made back
> before and had been refused, and the district attorney was just
> putting that back on the record for purposes of if he got convicted

---

[4] This Court has previously denied as without merit Thomas' habeas claims
challenging appellate counsel's failure to argue:  i) that the burden of proof was improperly
shifted to the defense; and ii) prosecutorial misconduct.  See May, 2006 Order (Dkt. No. 51)
at pp. 19-26.  This Court has also denied certain aspects of petitioner's theories which claim
that appellate counsel wrongfully failed to argue on appeal that Thomas' trial counsel
rendered ineffective assistance.  See id. at pp. 26-29.

> so probation would know there was some kind of colloquy about
> what he said about it, what probation would know.

Evidentiary Transcript (9/26/06) ("Evidentiary Tr.") (Dkt. No. 59) at 9.  As support for this

interpretation of that portion of the trial transcript, appellate counsel provided insight into the

manner in which plea proposals are handled in St. Lawrence County Court.  Specifically,

appellate counsel noted that under the standard practices of that court, the trial judge:

> serve[s] upon counsel what's called a preliminary conference
> memorandum and pretrial scheduling order where he specifically
> states that if a plea is not entered by a certain date, the only plea
> that will be accepted will be to the top count of the indictment.

Evidentiary Tr. (Dkt. No. 59) at p. 11.  Since no plea was tendered by Thomas prior to the date

specified in that preliminary conference memorandum, see, e.g., Evidentiary Tr. (Dkt. No. 59)

at 51, appellate counsel did not view the portion of the trial transcript cited above (see Trial Tr.

at pp. 42-43) as evidence that a viable plea proposal was available to Thomas immediately prior

to trial.  See Evidentiary Tr. (Dkt. No. 59) at pp. 12, 54-55.

    At the evidentiary hearing, appellate counsel also testified about facts germane to this

claim, but which are not apparent from the state court record.  Specifically, he testified that he

recalled having a conversation where Thomas told him "that he had been offered a plea and he

wasn't going to plead guilty because he wasn't guilty."  See id. at 14.  Appellate counsel

therefore stated that he failed to raise an appellate claim regarding the above issue based upon

his understanding of the way things work in St. Lawrence County "[a]nd [his] conversation

with Mr. Thomas."  See id. at p. 20.

    Thus, the evidence adduced at the evidentiary hearing demonstrated that:  I) no plea

proposal was available to Thomas immediately prior to trial; and ii) Thomas had been afforded

the opportunity to plead guilty in accordance with the terms of a pretrial scheduling order issued

by the County Court, however he refused to plead guilty in light of his firm belief that he was

innocent of all charges.  Furthermore, since Thomas was never placed in a "no return" position

in conjunction with any plea negotiations, *see* id. at p. 58, he could not establish that he was

entitled to specific performance of any plea proposal.  See, e.g. People v. McConnell, 49

N.Y.2d 340, 345-46 (1980); People v. Herber, 24 A.D.3d 1317, 1318 (N.Y. App. Div., 4th

Dep't. 2005); see also May, 2006 Order (Dkt. No. 51) at pp. 12-14.

     Based upon the above, this Court concludes that appellate counsel did not act in an

objectively unreasonable manner when he failed to argue on appeal that the County Court

improperly failed to allow Thomas to plead guilty rather than proceed to trial.  To the contrary,

the record, as supplemented by the testimony of appellate counsel at the evidentiary hearing,

demonstrates that no plea proposal was available to Thomas immediately prior to his criminal

trial and that he himself previously informed his appellate counsel that petitioner had refused to

enter a guilty plea because he was innocent of the charges brought against him in the

consolidated indictment.  Thus, the Third Department's decision denying this claim is neither

contrary to, nor represents an unreasonable application of, the above-cited Supreme Court

precedent.  This portion of his amended habeas petition must therefore be denied.

### ii.    Failure to Argue that Trial Court Erred in Failing to Provide Jury with Limiting Instruction

     During the course of Thomas' criminal trial, the prosecutor advised the trial court and

defense counsel, outside the presence of the jury, that one of the prosecution witnesses, Amy

Baker (Thomas' sister), had testified before the grand jury that she did *not* observe Thomas

holding a bat on the night he was alleged to have committed the assaults.  See Trial Tr. at pp.

34-35.  The prosecutor further advised the court and counsel that he discussed with Baker the

fact that she might be subject to perjury charges if she testified falsely before the petit jury at

Thomas' trial, and that, as a result, Baker eventually admitted to the District Attorney that she

had lied in her testimony before the grand jury and conceded that she had observed her brother

holding a bat on the night of the assault.  Id.

Thomas argues that during the prosecution's direct examination of this witness, the

District Attorney impeached Baker by referring to her prior grand jury testimony, during which

she testified that she did not observe Thomas with a bat in the early morning hours of

September 27, 1998.  See Memorandum of Law in Support of February, 2002 Coram Nobis

Application ("February, 2002 Supporting Mem.") at pp.13-15; see also Trial Tr. at pp. 72-73.

Petitioner accordingly claims that appellate counsel should have argued on appeal that the trial

court committed reversible error when it failed to provide the jury with a limiting instruction

required in light of CPL § 60.35.[5]  See Am. Pet. (Dkt. No. 5), Ground One; see also February,

---

[5]        CPL § 60.35 provides, in part, that:

***

2.        Evidence concerning a prior contradictory statement
introduced pursuant to subdivision one may be
received only for the purpose of impeaching the
credibility of the witness with respect to his testimony
upon the subject, and does not constitute evidence in
chief.  Upon receiving such evidence at a jury trial, the
court must so instruct the jury.

3.        When a witness has made a prior signed or sworn statement
contradictory to his testimony in a criminal proceeding upon a
material issue of the case, but his testimony does not tend to disprove
the position of the party who called him and elicited such testimony,

11

2002 Supporting Mem. at pp. 15-17.

An appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Robbins, 528 U.S. at 288. There is a "strong presumption of attorney competence," and the court's standard of review of an appellate counsel's performance is "highly deferential." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). Thus, to prevail upon a habeas claim alleging a failure on the part of appellate counsel to raise a particular argument on appeal, a petitioner must demonstrate that his counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir.), cert. denied, 531 U.S. 1116 (2001).

In light of CPL § 60.35, New York has created a pattern jury instruction for use in criminal cases where an attorney has impeached his own witness through the use of prior inconsistent statements. That limiting instruction provides as follows:

> Members of the jury, at this point, let me explain something to you.
>
> It has been brought out that the witness has allegedly made other statements under oath, or in a signed writing. According to the law, evidence concerning a prior contradictory statement may be received only for the purpose of impeaching the credibility of the witness with respect to his testimony upon the subject, and does not constitute evidence in chief.
>
> I charge and I emphasize that under no circumstances are

---

evidence that the witness made such prior statement is not admissible, and such party may not use such prior statement for the purpose of refreshing the recollection of the witness in a manner that discloses its contents to the trier of the facts.

CPL § 60.35.

you to consider such prior sworn or signed statement as evidence
in chief in this case.

However, if you are satisfied that such prior statement
was in fact made by the witness and that such prior statement is
in fact inconsistent with his testimony just given here in court,
you may consider such inconsistency only as it may reflect upon
or discredit the witness' testimony here in court.

N.Y.C.J.I., § 4.04 (reproduced in Dkt. No. 48).

At the evidentiary hearing, detailed testimony was elicited which related to appellate

counsel's decision to refrain from arguing on appeal that the trial court erred when it failed to

provide the jury with the above-described limiting instruction.  Specifically, the following

exchange occurred concerning that decision of appellate counsel:

| | |
|---|---|
| Petitioner's Counsel: | *** [T]he prosecutor on direct brought out [Amy Baker's] prior testimony in the grand jury, correct? Yes or no? |
| The Witness: | Yes. |
| Petitioner's Counsel: | Okay. Which was inconsistent with her trial testimony, correct? |
| The Witness: | Yes. |
| Petitioner's Counsel: | Okay.  And you also saw that the People in the presentation of their case established that Amy Baker lied to the grand jury and why she lied, right? In fact, I think they brought it out in their opening statement, correct? |
| The Witness: | Yes.  And I brought out it was totally improper. |
| Petitioner's Counsel: | And isn't it true that a limiting instruction given at |

13

that time with regard to the fact that the prior inconsistent statement can only be considered by the jury as credibility of the witness and not as evidence in the case-in-chief?

The Witness:  I don't understand your question.

Petitioner's
Counsel:       What don't you understand?

The Witness:  60.35 of the Criminal Procedure Law, subdivision 2 does not require a limiting instruction in a situation that you have described and [the] situation that arose in that case.

Petitioner's
Counsel:        The attorney didn't?

The Witness:  You asked me why.  I'm finishing my answer.

Petitioner's
Counsel:       Go ahead.

The Witness:   60.35 is to be used in a situation where you impeach your own witness with a prior contradictory statement only if that witness testifies to a material fact that tends to disprove your case. In this situation, that witness testified to a material fact that, in fact, proved the prosecution's case.  So it's not a case wherein, under that statute, a curative instruction was called for.  It's a situation where the district attorney impermissibly and improperly bolstered his own witness' testimony, and also when he opened to the jury said that she lied before the grand jury but she'll tell the truth now; he improperly vouched for that witness' credibility. And I raised both those points in this brief.

Petitioner's
Counsel:       Okay.  But you noticed that in the trial, the trial counsel did not request a limiting instruction; correct?

14

The Witness:   I didn't think that was wrong. But she didn't, no, you're right.

Petitioner's
Counsel:        And she didn't give –

The Witness:  None was required, correct.

Petitioner's
Counsel:        And you didn't believe that there was an issue with regard to either the trial attorney not requesting a limiting instruction or the trial court not on its own giving a limiting instruction, you didn't see that as an appellate issue; is that correct?

The Witness:  I though[t] the appellate issue was what I raised, that it was improper and that her, her objection was not sustained by the Court.

Petitioner's
Counsel:        So you didn't see as a viable appellate issue that the trial attorney had been ineffective and rendered ineffective assistance of counsel by not requesting that instruction of the Court?

The Witness:  I examined ineffective assistance.  I, I wrote back and forth to Mr. Thomas. I said I didn't think it would be any good, and I didn't raise it. I figured it was not, not good enough to make it.

Petitioner's
Counsel:        Okay. And you didn't, you didn't think it was an appellate issue, you didn't think that it was a valid appellate issue that the trial court did not on its own give a limiting instruction after the People had used that prior inconsistent statement?

The Witness:  What do you mean by a valid appellate issue?

Petitioner's
Counsel:        Just what I said.

The Witness:  What does valid mean?

15

Petitioner's
Counsel:          A potentially viable appellate issue.

The Witness:  No, I didn't.

Evidentiary Tr. (Dkt. No. 59) at pp. 26-29.

The above cited testimony, together with appellate counsel's testimony on cross-examination during that hearing regarding this issue, see Evidentiary Tr. at pp. 66-67, conclusively demonstrates that appellate counsel specifically reviewed the portion of the trial transcript cited by petitioner in support of this aspect of his petition.  Counsel thereafter determined that an "egregious violation" of CPL § 60.35(3) had occurred during the course of Thomas's trial, and accordingly briefed that issue on appeal.  See App. Br. at pp. 11-14. However, he concluded that no potentially viable appellate issue existed with respect to the argument now raised by Thomas.

As the Second Circuit observed in Sellan v. Kuhlman, 261 F.3d 303 (2d Cir. 2001), the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  Id. at 317 (internal quotation and citations omitted); see also Brown v. Filion, No. 03 CIV. 5391, 2005 WL 1388053, at *16 (S.D.N.Y. June 13, 2005) (citations omitted), adopted, 2005 WL 2159675 (S.D.N.Y. Sept. 6, 2005).

The record demonstrates that counsel utilized sound professional judgment in determining which arguments to assert on appeal concerning the prosecutor's reference at trial to Baker's grand jury testimony.  Specifically, it is uncontested that appellate counsel reviewed the identical portion of the trial transcript which Thomas cites in support of this aspect of his

16

habeas petition, however, appellate counsel argued that the provisions of CPL § 60.35(3), rather than CPL § 60.35(2), were violated by the prosecution's reference to Baker's grand jury testimony.  The state court record below, together with the testimony adduced at the evidentiary hearing, establish that counsel did not act in an objectively unreasonable manner in deciding to assert that particular argument.  Furthermore, counsel did not err in failing to claim that an error was committed during the criminal trial below due to the County Court's failure to provide the jury with the limiting instruction discussed above.  Therefore, Thomas cannot demonstrate that the Third Department's decision denying this aspect of his *coram nobis* application was either contrary to, or represents an unreasonable application of, the above-referenced Supreme Court precedent.  Thus, this aspect of his habeas petition is denied.

### iii.      Ineffective Assistance of Trial Counsel

The next claim which this Court must consider alleges that petitioner's appellate counsel rendered ineffective assistance by failing to argue on appeal that Thomas received the ineffective assistance of trial counsel.  See Am. Pet., Ground One.

The Court's May, 2006 Order denied all aspects of this theory for *habeas* relief except the portion of such claim which challenged appellate counsel's failure to argue that trial counsel was ineffective because he failed to claim: I) that the County Court erred in denying Thomas the opportunity to plead guilty immediately prior to trial; and ii) the trial court committed error when it failed to provide the CPL § 60.35 limiting instruction.  See May, 2006 Order (Dkt. No. 51) at pp. 27-29.[6]

_____

[6] As to these two remaining theories, this Court noted in its May, 2006 Order that at the evidentiary hearing, Thomas' counsel could question appellate counsel concerning his rationale for failing to assert an ineffective assistance of trial counsel claim relating to the

As is discussed more fully above, the Court has determined that Thomas declined to plead guilty to any of the charges because he believed he was not guilty of all charges. Additionally, no plea proposal was offered by the prosecution just prior to the commencement of Thomas' trial. Appellate counsel cannot be found to have rendered ineffective assistance by failing to assert a meritless claim on appeal. See Lopez v. Fischer, No. 05 Civ.2558(NRB), 2006 WL 2996548, at *12 (S.D.N.Y. Oct. 16, 2006) ("petitioner cannot show that appellate counsel's failure to raise [meritless] claims on direct appeal renders his representation below an objective standard of reasonableness, nor can petitioner show that had these claims been presented on appeal, his outcome would have been any different"); Melenciano v. Walsh, No. 02 Civ. 9593(HB), 2005 WL 768591, at *8 (S.D.N.Y. Apr. 6, 2005) ("Where the underlying claim is without merit, the claim of ineffective assistance of counsel for not raising the issue during the trial is, likewise, meritless.") (citations omitted).

With respect to appellate counsel's failure to argue that trial counsel rendered ineffective assistance because she did not object to the County Court's failure to provide the CPL § 60.35 limiting instruction referenced above, appellate counsel testified at the evidentiary hearing that he "examined ineffective assistance" as an appellate claim on this issue, but that counsel ultimately concluded that "it was not, not good enough to make it." Evidentiary Tr. (Dkt. No. 59) at p. 29. As discussed above, petitioner has wholly failed to demonstrate that this strategic decision of counsel was objectively unreasonable. Thus, this aspect of his amended petition is without substance.

---

above-described theories. See May, 2006 Order (Dkt. No. 51) at p. 27.

### iv.     Conflict of Interest

Thomas also asserts that appellate counsel labored under "an actual conflict of interest resulting in a *per se* violation" of Thomas' constitutional right to counsel.  Am. Pet. (Dkt. No. 5), Ground One.  Specifically, Thomas claims that appellate counsel labored under a conflict of interest when he represented Thomas on appeal because he had previously prosecuted Thomas in his prior capacity as the St. Lawrence County District Attorney.  See, e.g., Affidavit in Support of September, 2003 *Coram Nobis* Application at ¶¶ 9-31.  He argues that as a result of that conflict, his appellate attorney "purposefully and ethically neglected to raise five meritorious points" on appeal in conjunction with Thomas' direct appeal, and that such conflict adversely affected counsel's performance and requires reversal of his convictions.  Am. Pet. (Dkt. No. 5), Ground One.

In this Court's May, 2006 Order, the Court determined that petitioner failed to demonstrate the existence of a *per se* conflict of interest between him and his appellate counsel. May, 2006 Order (Dkt. No. 51) at pp. 30-31.  This Court then noted that in considering whether an actual or potential conflict of interest existed with respect to appellate counsel's representation of Thomas, the state court record failed to reflect the extent, if any, of appellate counsel's involvement in the prior prosecutions referenced by Thomas in his September, 2003 *Coram Nobis* Application, including the issue of whether appellate counsel previously discussed his prior role as prosecutor with Thomas.  See id. at pp. 32-33.  Testimony at the evidentiary hearing provided additional information relating to this issue.  Specifically, Thomas' appellate counsel testified that although he was he uncertain of the date on which he discussed the issue of the potential conflict with Thomas, counsel specifically recalled

19

discussing the possibility of such a conflict with Thomas sometime between October 5, 1999

and October 21, 1999.  Evidentiary Tr. (Dkt. No. 59) at p. 43.  In describing the essence of that

conversation, appellate counsel testified that:

> The sum and substance [of his conversation with Thomas] was
> that if he felt uncomfortable with me as his assigned appellate
> counsel, if he felt there was -- that I had a conflict, that because I
> was district attorney when he was indicted, that I wouldn't do a
> good job for him, all he had to do was tell me and I would tell the
> Appellate Division that I would not be taking the assignment.
> And his response was the sum and substance of, oh, no, friend of
> mine, telling me you're a good lawyer; I've talked to other people
> that have had good results with you and I definitely want to you
> represent me.  In sum and substance; I mean those are -- they
> could be exact words, they could not be, but they're definitely
> sum and substance of the conversation.

Id. at pp. 68-69; see also id. at p. 37.  After their conversation, appellate counsel's

understanding was that Thomas both understood and agreed to waive the potential conflict

issue.  Evidentiary Tr. (Dkt. No. 59) at p. 69.[7]

An individual who is faced with the possibility that his attorney might become

conflicted may waive the potential conflict of interest "in order to retain the attorney of his

choice."  United States v. Blau, 159 F.3d 68, 74 (2d Cir. 1998) (quoting Williams v. Meachum,

948 F.2d 863, 866 (2d Cir. 1991)).  Such a waiver is valid where it is both knowing and

intelligent.  Blau, 159 F.3d at 74 (citing Edwards v. Arizona, 451 U.S. 477, 482 (1981).

Whether a defendant's waiver is knowing and intelligent depends on the circumstances of each

---

[7] When asked whether he created any note which memorialized that conversation,
appellate counsel conceded that he did not place a memorandum in the file which confirmed
the substance of his telephone conversation with petitioner.  See Evidentiary Tr. (Dkt. No.
59) at p. 41.  Counsel noted, however, that the letterhead at the top of all letters he wrote to
Thomas reflected the fact that appellate counsel had been the District Attorney for St.
Lawrence County in the years 1992 through 1995.  Id.

individual case, as well as the background and experience of the accused.  <u>Blau</u>, 159 F.3d at 74.

In the related criminal matter, appellate counsel unequivocally testified at the evidentiary hearing that he specifically recalled advising Thomas of the potential conflict that may have existed, however, Thomas nevertheless stated that he wanted appellate counsel to continue his representation.  <u>See</u> Evidentiary Tr. (Dkt. No. 59) at pp. 36, 42, 67-68.  No evidence was presented at the evidentiary hearing – or in the state courts – which suggests, in any way, that appellate counsel's testimony regarding this issue is inaccurate in any way.  Since Thomas specifically waived any potential conflict regarding appellate counsel's representation of petitioner, the Third Department's November 14, 2003 Order (Dkt. No. 43, Ex. 13) which denied his claim that such alleged conflict entitled him to a new trial is neither contrary to, nor represents an unreasonable application of Supreme Court precedent.

In sum, Thomas is not entitled to habeas relief on any of his theories alleging ineffective assistance of appellate counsel.  Therefore, the Court denies his first ground for relief in its entirety.

### 2.   <u>Remaining Claims</u>

Thomas' second ground for relief alleges error on the part of the trial court in refusing to afford Thomas the opportunity to accept the plea proposal purportedly offered by the prosecution just before trial merely because a jury had already been selected for his trial.  <u>See</u> Am. Pet. (Dkt. No. 5), Ground Two.

In his third ground for relief, Thomas argues that he was denied due process of law when the trial court failed to provide the jury with the limiting instruction discussed above when the prosecutor referred to Amy Baker's grand jury testimony during the course of the

trial.  See Am. Pet. (Dkt. No. 5), Ground Three.

In his sixth and final *habeas* claim,[8] Thomas argues that his trial attorney rendered

ineffective assistance of counsel in a variety of ways, including, *inter alia*: I) trial counsel's

failure to object to the county court's refusal to allow petitioner to consider the plea proposal;

and ii) defense counsel's failure to object to the prosecutor's impeachment of his own witness.

See Am. Pet. (Dkt. No. 5), Ground Six.[9]

As noted in this Court's May, 2006 Order, Thomas never asserted in the state courts, as

***independent*** claims for relief, the claims he now asserts in grounds two, three and six in his

amended petition.  See May, 2006 Order (Dkt. No. 51) at p. 37.   Since Thomas is precluded

from either filing another appeal with the Third Department in order to advance these

arguments, or bringing another collateral challenge in the state courts in which he raises such

claims, petitioner's second, third and sixth grounds for relief are both "deemed exhausted" and

procedurally defaulted.  See May, 2006 Order (Dkt. No. 51) at pp. 38-39 (citations omitted).

Consequently, this Court may only consider the substance of these procedurally barred claims if

Thomas establishes both cause for his procedural default and resulting prejudice, or

alternatively, that a fundamental miscarriage of justice would occur absent federal court review.

Id. at pp. 39-40 (citations omitted).

Thomas argued in his traverse that his appellate counsel's failure to raise the above

---

[8] This Court has already denied Thomas' fourth and fifth grounds for relief as
procedurally forfeited.  See May, 2006 Order (Dkt. No. 51) at pp. 41-43.

[9] In the May, 2006 Order this Court denied the other theories asserted by Thomas in
support of his ineffective assistance of trial counsel claim.  See May, 2006 Order (Dkt. No.
51) at pp. 27-29.

claims on appeal established the requisite cause for his default on these grounds.  See Traverse at ¶¶ 16-18.  However, as is discussed more fully above, Thomas' claim that appellate counsel rendered ineffective assistance in failing to pursue these claims is without substance.  Therefore, appellate counsel's alleged ineffectiveness cannot constitute "cause" sufficient to excuse Thomas' default.  See Williamson v. Burge, No. 02-CV-0044 (N.D.N.Y. June 28, 2005) (Dkt. No. 41), slip op. at 16 (citations omitted), adopted Williamson v. Burge, No. 02-CV-0044 (N.D.N.Y. Sept. 28, 2005) (Dkt. No. 48) (*Kahn*, D.J.), appeal dismissed, Williamson v. Burge, No. 05-6995pr (October 12, 2006); see also Larrea v. Bennett, No. 01 CIV. 5813, 2002 WL 1173564, at *14 (S.D.N.Y. May 31, 2002) (where ineffective appellate counsel claim is without merit, that claim "may not serve as 'cause' for the procedural default of his ineffective trial counsel claim") (citing Aparicio v. Artuz, 269 F.3d 78, 92-93 (2d Cir. 2001)).

Since Thomas has not established cause for his procedural default concerning these claims, this Court need not decide whether he suffered any prejudice, because federal habeas relief is unavailable under this limited exception permitting review of procedurally barred claims unless ***both*** cause and prejudice is demonstrated.[10]  See Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985).

Finally, as noted in this Court's May, 2006 Order, the evidence adduced at trial clearly established Thomas' guilt with respect to the second degree assault charge as to McDonald, and amply supported the Third Department's determination that Thomas was guilty of the reduced charge of attempted second degree assault as to Corkins.  See, e.g., May, 2006 Order (Dkt. No.

---

[10] The petitioner bears the burden of demonstrating cause for her procedural default and resulting prejudice.  See Simpson v. Portuondo, 01 Civ. 8744(WHPJCF), 2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

51) at p. 43.  Since petitioner cannot demonstrate that he is actually innocent of the charges

challenged by his amended petition, this Court cannot excuse petitioner's procedural default on

these grounds.  See Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 170

(2d Cir. 2000); Speringo v. McLaughlin, 202 F. Supp. 2d 178, 189-90 (S.D.N.Y. 2002).

Therefore, this Court denies and dismisses these remaining claims as procedurally forfeited.

**III.**   **Conclusion**

  Based on the foregoing discussion and the Court's May, 2006 Order, it is hereby

  **ORDERED**, that petitioner's Amended Petition (Dkt. No. 5) is **DENIED** and

**DISMISSED**, and it is further

  **ORDERED**, that the state court records be returned directly to the Attorney General at

the conclusion of these proceedings (including any appeal of this Memorandum-Decision and

Order filed by any party), and it is further

  **ORDERED**, that the Clerk serve a copy of this Order on all parties.

  **IT IS SO ORDERED.**

DATED:  January 22, 2007
     Albany, New York

         Lawrence E. Kahn
         U.S. District Judge